**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DAYBREAK LODGE NURSING AND CONVALESCENT HOME, INC., Respondent.**

**No. 77–2270.**

United States Court of Appeals, Third Circuit.

Argued July 25, 1978.

Decided Oct. 17, 1978.

As Amended Dec. 5, 1978.

---

Barry F. Bevacqua, Julius M. Steiner, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for respondent.

Elliott Moore, Madge F. Jefferson, Robert Sewell, N. L. R. B., Washington, D. C., for petitioner.

Before ADAMS, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The National Labor Relations Board (Board) has filed suit pursuant to 10(e) of the National Labor Relations Act (Act), 29 U.S.C. § 151 *et seq.*, seeking enforcement of its order issued against Daybreak Lodge Nursing and Convalescent Home, Inc. (Home). The Board found the Home in violation of Sections 8(a)(1) [1] and 8(a)(5) [2] of the Act, 29 U.S.C. §§ 158(a)(1) and (a)(5). We will enforce the order although we make no decision as to the existence of an 8(a)(5) violation.

### I.

The Retail Store Employees Union, Local 1349 (Union), began an organizational campaign among the Home's service and maintenance employees in the fall of 1975. On November 11, 1975 the Union advised the Home that the Union represented a majority of the employees in an appropriate unit and demanded to be recognized as the bargaining representative of the employees in that unit; however, the record indicates that the Union did not have a card majority

---

1. Section 8(a)(1) provides:
   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

2. Section 8(a)(5) provides:

(a) It shall be an unfair labor practice for an employer—
   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

as of this date. The Home made no response. On November 14, 1975, the Union filed a representation petition with the Board. On December 31, 1975, the Regional Director, after a hearing, directed that an election be held. The appropriate unit was defined as following:

All full-time and regular part-time service and maintenance employees at Employer's nursing home at Wilmington, Delaware, but excluding all registered nurses, licensed practical nurses, office clerical employees, technical employees, professional employees, guards and supervisors as defined in the Act.

An election was held on January 29, 1976 with thirty-one employees voting in favor of the Union and thirty-four voting against. On July 13, 1976, the Regional Director issued an unfair labor practice complaint against the Home. On February 4, 1976, the Union filed objections to the election and an unfair labor practice charge against the Home. The Union's and Board's charges were consolidated for hearing before an Administrative Law Judge.

The ALJ found that Leonard Leeds, the Home's administrator, committed numerous violations of 8(a)(1). These acts included: 1) threats to fire employees and subcontract their work if the Union became their representative; 2) threats to fire employees who supported the Union; 3) withholding a scheduled wage increase to one employee because of the pendency of the Union organization drive; 4) coercive interrogation of an employee with regard to an affidavit submitted by that employee to the Board and 5) threats as to the consequences of having a union including violent and costly strikes and bargaining "from nothing."

The above violations were found by the ALJ to have "created an atmosphere of fear and coercion in the employee unit and precluded employee free choice in the election of January 29, 1976." (Opinion of the ALJ, Appendix, p. 368). Therefore, the ALJ recommended the setting aside of the election. In addition he recommended the issuance of a bargaining order. The ALJ

found that "the Union had obtained a card majority shortly before the election on January 29, 1976. . . . Most of the cards were signed in November 1975, and another group was signed in middle and late January 1976." *Id.*, p. 369 (footnote omitted). This majority was undermined by the Home's conduct as summarized above. The Board affirmed "the rulings, findings, and conclusions of the Administrative Law Judge" and "adopt[ed] his recommended Order." 230 NLRB No. 127.

The Home opposes enforcement of the Board order on the following grounds:

1. That substantial evidence on the record as a whole does not support the Board's finding of the violations of Section 8(a)(1);

2. That the bargaining order is invalid because the union failed to make valid demand for recognition, because the NLRB's mere adoption of the ALJ's findings and conclusion is improper and because the unfair labor practices found here do not warrant such an order; and

3. That the NLRB improperly gave retroactive effect to its bargaining order.

II.

The testimony given by several of the Home's employees was clearly substantial evidence supporting the Board's finding of numerous 8(a)(1) violations by the Home. That evidence is well summarized in the ALJ's opinion, Appendix, pp. 361–68.

This court has recently held that we will not refuse to enforce a bargaining order merely because the Board adopted the ALJ's findings and conclusions with respect to such order instead of filing independent findings. *Kenworth Trucks of Philadelphia, Inc. v. N.L.R.B.*, 580 F.2d 55 (3d Cir. 1978). The ALJ's findings and conclusions which the Board adopted were sufficient to meet the standard of analysis and elucidation set by *N.L.R.B. v. Armcor Industries, Inc.*, 535 F.2d 239 (3d Cir. 1976).

The Home argues that the unfair labor practices here do not warrant imposition of a bargaining order and that there is no

violation of 8(a)(5) on which to premise a bargaining order since there was no valid demand for recognition of the Union. In *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969), the Supreme Court said that the Board could issue bargaining orders in cases falling into two categories:

I. Exceptional cases marked by outrageous and pervasive unfair labor practices of such a nature that they cannot be eliminated by traditional methods, and thus a fair and reliable election cannot be held; and

II. Cases marked by less pervasive practices which nonetheless still have a tendency to undermine majority strength and impede the election process, and in which additionally there is a showing that the union at one point had a majority. In this category the Board must find that the possibility of insuring a fair election is slight and employee sentiment once expressed through cards would on balance be better protected by a bargaining order.

In the case *sub judice* the ALJ and the Board found that the facts justified a bargaining order under either category. We need not determine if the Board was correct in deciding that this case falls within Category I because we conclude that the order is sustainable under Category II since at one time before the election the union did have a card majority.

The Home's top official committed numerous unfair labor practices including threatening to fire a specific employee for supporting the union as well as threatening to fire the entire unit if the union won the election. The ALJ found that the improper threats and inducements made by the Home "affected the bargaining unit in general" because the threats were disseminated by the employees among themselves and because the threats were general in nature; that many of the threats came within the couple weeks prior to the election when they were likely to be most potent; and that those threats included predictions of violence to result from strikes.

■ The bargaining order was issued as a remedy because the election had been tainted, and the employer's unfair practices made it unlikely that a fair election could be held. In these circumstances, it was not necessary that there have been a finding of an 8(a)(5) violation. We, therefore, find it unnecessary to consider whether there was an 8(a)(5) violation in the circumstances of this case where at the time the union made its demand for recognition it did not in fact have a card majority.

### III.

The Home's final argument is that the Board improperly made its bargaining order retroactive to January 29, 1976, the date by which the Union was found to have reached majority status. By this date, the Home had also begun the unfair labor practices that resulted in the issuance of the bargaining order here. In fact, except for one incident of coercive interrogation, all the unfair labor practices found here were committed prior to the election. The Home contends that a bargaining order cannot be made retroactive to a date prior to a valid demand for recognition and that, therefore, where no valid demand has been made, a bargaining order must be of purely prospective application.

This contention, however, is contrary to the law of this circuit as expressed in *N.L.R.B. v. Eagle Material Handling, Inc.*, 558 F.2d 160 (3d Cir. 1977). In *Eagle*, as here, a bargaining order was issued and enforced in the absence of a demand for recognition or a violation of § 8(a)(5). That bargaining order was made retroactive to the beginning of the unfair labor practices which gave rise to the order.

■ We hold, therefore, that a bargaining order was properly made retroactive to a date on which the union had achieved majority status and on which the unfair labor practices that gave rise to the bargaining order had begun. We recognize that the Eighth Circuit in *Drug Package, Inc. v. N.L.R.B.*, 570 F.2d 1340 (8th Cir.

1978), has stated that a retroactive bargaining order is only proper where an 8(a)(5) violation is found. Since the purpose of a bargaining order is to remedy the violations found and since the Board is given wide discretion in determining the proper remedy, we perceive no reason to prevent the Board from making its order effective as of the date that union achieved majority status and that the employer's course of illegal conduct was under way without regard to the employer's knowledge of majority status. The harm being remedied here is the undermining of majority status and the destruction of the environment in which a fair and free election could be held. Making the bargaining order effective as of the date when that majority was achieved, and by which date the employer had already begun to destroy that environment is an appropriate remedial measure. That the employer did not originally understand the full consequences of its illegal acts clearly does not prevent the issuing of a bargaining order, and should not, we believe, prevent that order being made effective as of the date here.

Therefore, the order here will be enforced in its entirety.